**UNITED STATES of America,**
**Plaintiff,**
v.
**INTERSTATE COMMERCE COMMISSION and United States of America,**
**Defendants.**
**Civ. A. No. 4001–54.**

United States District Court
District of Columbia.
June 6, 1955.

James E. Kilday, Albert Parker, Colin A. Smith, Sp. Assts. to Atty. Gen., Stanley N. Barnes, Asst. Atty. Gen., Leo A. Rover, U. S. Atty., for plaintiff.

Edward M. Reidy, Gen. Counsel, Samuel R. Howell, Asst. Gen. Counsel, ICC, Washington, D. C., for defendant Interstate Commerce Commission.

Windsor F. Cousins, Philadelphia, Pa., Hugh B. Cox, Charles P. Reynolds, Washington, D. C., R. B. Gwathmey, Wilmington, N. C., Martin A. Meyer, Jr., William B. Jones, A. J. Dixon, Washington, D. C., John P. Fishwick, New York City, for intervenors.

Before BAZELON, Circuit Judge, and PINE and KEECH, District Judges.

PER CURIAM.

This is an action by the United States, through its Department of the Army, against the Interstate Commerce Commission and the United States. It seeks to set aside the Commission's order of June 1, 1953, in a proceeding known as United States of America v. Aberdeen & Rockfish Railroad Company, et al., Docket No. 30989, reported at 289 I.C.C. 49. In that order the Commission dismissed a complaint in which the United States sought a determination that the refusal of the railroads named defendants therein to pay an allowance for wharfage and handling on military traffic passing through Army Base Piers in Norfolk, Virginia, on and after May 1, 1951, constitutes a violation of the Interstate Commerce Act. It also sought a cease and desist order against such practices in the future. The railroads named defendants

in the Commission proceeding have been permitted to intervene herein.

Upon consideration of the record herein, briefs, and argument of counsel, we conclude that the Commission's order of June 1, 1953, is supported by adequate findings; that these findings, in turn, are supported by substantial evidence in the record, particularly the testimony of plaintiff's own witnesses; that the record amply supports the finding that plaintiff has not been accorded different treatment from any other shipper under the same or similar circumstances and has not been subjected to any unlawful discrimination; that the findings form a rational basis for the Commission's ultimate conclusion that failure and refusal of the defendants to absorb wharfage and handling costs on the complainant's traffic moving over its piers at Norfolk on and since May 1, 1951, had not been shown to have subjected or to subject the complainant to the payment of rates and charges which were or are unjust, unreasonable, or otherwise unlawful. We further find that the Commission did not fail to consider material evidence of record; that the Commission did not misapply or act contrary to any principle of law; and therefore the Commission's order was not arbitrary or capricious or contrary to law. Detailed and step-by-step discussion and analysis of the bases for these conclusions would be repetitive and would needlessly burden an already overburdened record, and no useful purpose would be served thereby.

The opinion of the United States Court of Appeals for the District of Columbia in United States v. Interstate Commerce Commission, 1952, 91 U.S.App.D.C. 178, 198 F.2d 958, in a prior proceeding involving wharfage and handling costs at the same Army Base Piers during World War II, upon which plaintiff heavily relies, does not impel reversal of the Commission's order in this case. The tariffs here under consideration,[1] which are the

1. The Pennsylvania Railroad tariff as to wharfage and handling charges at the Norfolk Terminals Division of Stevenson

& Young, Inc., which plaintiff cites as typical of the tariffs here in issue, appears in Exhibit 9 before the Commis-

sole basis of plaintiff's action, are materially different. They specifically and clearly define the conditions under which wharfage and handling are included in the freight rates. The shipments of the United States here in question do not conform to those conditions. Hence, under such circumstances, the United States, like any other shipper similarly situated, is not entitled to such terminal services or any allowance therefor. The record before the Commission and the Commission's findings in the instant case are not inadequate, as they were held to be in the earlier proceeding,[2] and the facts herein are vitally different.[3] As shown by the Commission's report of June 1, 1953, the Commission in this proceeding took careful notice of the Court's opinion in the prior case and conformed to the legal principles therein stated, insofar as they were applicable to the facts of the proceeding before it.

For the foregoing reasons, we hold that the order of the Interstate Commerce Commission must be sustained and the complaint herein dismissed.

PINE and KEECH, JJ., concur.

BAZELON, Circuit Judge (dissenting).

I conclude that the decision of our Court of Appeals in United States v. Interstate Commerce Commission[1] is controlling here and requires reversal of the Commission's order dismissing the complaint of the United States. The United States alleged, in pertinent part: under the export tariffs involved here, the railroads were obligated to furnish wharfage and handling services; when the railroads declined to perform these services on traffic moving over Army Base Piers at Norfolk, Virginia, the Army itself did so; and the United States was therefore entitled to an allowance for what the railroads would have had to pay for these services. Refusal of the railroads to make such allowance, says the United States, subjected it to the payment of unjust and unreasonable rates in violation of the Interstate Commerce Act.[2]

Like Chairman Alldredge of the Interstate Commerce Commission, who dissented from the order we now review, I, too, "am unable to discover any substantial differences" between the tariffs and facts of record here, and those covered by the Court of Appeals' decision. There it was pointed out that "even assuming that performance by the carriers would not have been 'practical'—that no arrangement satisfactory to the Army could have been worked out—the carriers' inability to perform would not of itself release them from their tariff obligation."[3] That obligation includes wharfage and handling. Here, as there, the Army's "action, taken in an emergency to assure a smooth flow of war materiel, [did not] increase the cost to the railroads or inconvenience them in any way. Moreover, had [the public wharfinger continued to act on behalf of the railroads], the Army could still have controlled the piers and the shipments passing over them by the use of military priorities and routings. See Interstate Commerce Act § 6(8), as amended, 49

sion, Part 16, pp. 1–3, both as it existed prior to January 1, 1952, and as amended on that date.

2. On remand of the World War II case, the Commission took additional evidence, reexamined the entire record in the light of the Court of Appeals' opinion, and on January 17, 1955, rendered a report making detailed findings of fact and adhering to the conclusion that there had been no

unlawful discrimination against the United States.

3. See Commission's report, 289 I.C.C. 49, 51.

1. 1952, 91 U.S.App.D.C. 178, 198 F.2d 958.

2. 24 Stat. 379 (1887), as amended, 49 U.S.C.A. §§ 1(5), 1(6), 2, 3(1), 6(7).

3. 91 U.S.App.D.C. at page 190, 198 F.2d at page 969.

U.S.C.A. § 6(8). * *· * All the Government now asks is that the railroads pay it for wharfage and handling what they would have paid the [public wharfinger for such services] * * *." 4